UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CARLOS GARCIA-LOPEZ,

                            Petitioner,                     05 Civ. 10340 (RPP)

       -    against -                            AMENDED
                                                OPINION AND ORDER

BRIAN FISCHER,

                          Respondent.
-----------------------------------------------------------X

ROBERT P. PATTERSON, JR., U.S.D.J.

       Carlos Garcia-Lopez ("Petitioner"/"Defendant") brings this petition for a writ of

habeas corpus under 28 U.S.C. § 2254 ("§ 2254"), challenging a judgment of conviction

of Assault in the Second Degree and Criminal Possession of a Weapon in the Second

Degree, and his sentence of 16 years to life, due to his status as a persistent violent felony

offender.

## BACKGROUND

       On or about March 25, 1999, Petitioner was indicted by a Bronx County Grand

Jury of Attempted Assault in the First Degree, Assault in the Second Degree, Criminal

Possession of a Weapon in the Third Degree, and Menacing in the Second Degree.  (See

Affidavit of Eldar Mayouhas, dated November 28, 2006 ("Mayouhas Aff.") Ex. 2

(Respondent's Brief to the New York Appellate Division, First Department) at 3.)

       On April 10, 2000, Justice Ira Globerman denied a motion to suppress a "gun

[and] . . . a statement made to [an] undercover officer . . . that [Petitioner] had [shot] a

woman on Valentine Avenue."  See People v. Garcia-Lopez, No. 2001-99 (N.Y. Sup. Ct.

dated April 10, 2000) (ruling on pretrial omnibus motion).  Judge Globerman ruled that

the motion was untimely, but noted that he would also have denied the motion on the

merits:

> In the instant case, inasmuch as the defendant allowed the undercover
> officer to enter his home and spoke freely with him, there are no grounds
> for suppressing the gun which the defendant voluntarily sold to the
> undercover officer.  With respect to the statement evidence, I find that the
> statement was voluntarily made and was part of the <u>res</u> <u>gestae</u> of the sale
> of the handgun to the undercover officer. Accordingly, defendant's motion
> would be denied on the merits as well.

<u>Id.</u>  Three days later, at a Wade/Dunaway hearing in front of Justice Harold Silverman,

defense counsel, Robert Bornstein, Esq., moved to suppress the gun and statement again.

Justice Silverman declined to rule on either issue as they were already determined by

Justice Globerman.

Justice Silverman, however, did rule that Detective Daniel Rice, the arresting

officer, had probable cause for Petitioner's arrest based on the following findings of facts:

> Ms. Gloria Enriquez stated that she had been shot by an individual
> she knew as Little . . . .  She described him as a male Hispanic, 29 years of
> age . . . 5'6", husky built, black hair fade, meaning a hair style, shave line
> on his head with a thin black mustache and gave a clothing description as
> well. . . .  There after, the arresting officer . . . met Sergeant Smith from a
> narcotics unit . . . [who] stated that a seller known as Little was involved
> in drug deals in the 156th Street area.
>     On . . . February 5 of '99 Sergeant Smith gave the arresting officer
> a name, Carlos Garcia-Lopez and also a description.  The arresting officer
> did not recall the description. . . .  On February 25, the arresting officer
> spoke with an undercover officer who had been involved with a drug deal
> and was told by the undercover that a man he said was Little told him he
> had shot a girl on Valentine Avenue and the [undercover] officer
> purchased a 380 caliber gun from [Little].  Ballistic evidence that had been
> recovered at the scene of the shooting indicated a 380 gun was used
> because shells had been recovered.

 (Supp. Hearing, dated April 13, 2000 ("SH") at 109-10.)  He also ruled that a

confirmatory pretrial identification of Petitioner was not unduly suggestive because:

> [Detective Rice] took a photo of the defendant . . . and placed that photo in a photo book which contained different races, different ethnic groups . . . [including] some 60 photographs of male Hispanics.  He showed the book to the complainant, did not tell her whose photo was in the book or that anyone had been detained.  The complainant looked through the book and identified the person who shot her as the defendant.

(Id. at 111.)  Based on these facts, he refused to suppress Ms. Enriquez's identification of Petitioner or order her in for an independent source hearing.  (Id. 113-14.)

Defense counsel moved again to suppress the gun and the statement made to Detective Rodriguez, the undercover, in front of Justice Caesar Cirigliano, who presided at trial.  (See Transcript, dated October 2-4, 2000 ("Pretrial Tr.") 3-8.)  Justice Cirigliano denied both motions:

> I find that the motion to preclude [the statement] should be denied.  People were under no duty to give notice of the defendant's res gestae statement to the undercover officer.  I also find there was no basis to grant the defendant's motion for a Mapp Hearing inasmuch as the gun was not obtained as a result of the police search; rather, the gun was recovered from the defendant's home by an undercover officer who, in his undercover capacity, purchased the gun from the defendant. . . .  I concur in Judge Globerman's decision.

(Id. at 8.)

At trial, the complainant, Gloria Enriquez, testified that on January 25, 1999, Petitioner, whom she knew as "Chicito," [sic] ("Chiquito," or "Little" in English), shot her four times in the legs outside of an apartment building on 2537 Valentine Avenue. (See Transcript, dated October 5-13, 2000 ("Trial Tr.") 67, 73.)  She testified that, at the time of the assault, she had known Petitioner for four months, during which time she had sexual relations with him, and had bought drugs from him and sold drugs for him.  (Id. at 67-8.)  She made an in-court identification of Petitioner.  (Id. at 67.)

Detective Francis Rodriguez of the New York City Police Department, testified that, during an undercover narcotics investigation, he became acquainted with Petitioner, whom he knew as Little.  (Id. 124-25.)  Detective Rodriguez testified that on February 25, 1999, as part of his undercover investigation he engaged in conversation with the Petitioner, and that during this conversation, Petitioner said "[d]id I tell you that I shot a girl on Valentine [Avenue]."  (Id. at 134.)  Detective Rodriguez also testified that, on the same day, he purchased a Lorcin .380 handgun from Petitioner for $500.  (Id.)  The handgun purchased by Detective Rodriguez was admitted into evidence at the trial. (Id. at 137.)

Detective Daniel Rice testified that he arrested Petitioner on March 5, 1999 for the shooting of Ms. Enriquez.  (Id. at 398.)  The arrest was based on Detective Rice's interviews of Ms. Enriquez in which she described Petitioner.  (See id. at 403, 416.)

Detective Kevin Barry testified that the caliber of the gun purchased by Detective Rodriguez on February 25, 1999 was consistent with the caliber of the shell casings and bullet fragments found in connection with the assault on Ms. Enriquez on January 25, 1999, but that he could not say from his inspection of the shell casings and bullet fragments that it was the gun used in the assault.  (Id. at 351-52.)

On October 13, 2000, a jury convicted Petitioner of one count of Assault in the Second Degree and one count of Criminal Possession of a Weapon in the Second Degree.[1]  (Id. at 622-25.)  On March 8, 2001, Justice Cirigliano sentenced Petitioner to 16 years to life imprisonment. (See Mayouhas Aff. ¶ 5.)

---

[1] "A person is guilty of assault in the second degree when: with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument."  N.Y. PENAL LAW ("NYPL") § 120.05[2] (McKinney 2006).  "A person is guilty of criminal possession of a weapon in the second degree when:(1) with intent to use the same unlawfully

Petitioner appealed his conviction and sentence to the Appellate Division, First

Department.  His appellate counsel, Michael J.Z. Mannheimer, Esq., raised four points:

(1) that the trial court erroneously denied motions to preclude the defendant's statement

to Detective Rodriguez, "I shot a girl on Valentine [Avenue]"; (2) that the hearing court

erroneously denied a motion to suppress the complainant's "expected in-court

identification" of the defendant because there had been no probable cause for his arrest;

(3) that the trial court erroneously discharged a juror without the defendant's consent or a

fuller inquiry; and (4) that New York's persistent violent felony offender statute violated

both the federal and state constitutions by allowing judges to determine prior convictions

for violent felonies and to enhance sentences based on those findings beyond the

statutory maximum for the convicted conduct.  (See id. Ex. 1 (Brief for Defendant-

Appellant, dated December, 2002) 28-63.)  Respondent filed its opposition brief in

August, 2003.  (See id. Ex. 2.)  On September 16, 2003 the Appellate Division affirmed

Petitioner's judgment of conviction:

> The motion and trial courts properly denied defendant's motions, made on the ground of failure to provide notice pursuant to CPL 710.30(1)(a), for preclusion of a statement made by defendant in the course of an unrelated drug transaction. During this transaction, defendant volunteered, to an undercover officer having no knowledge of the instant assault case, that he had shot a girl on Valentine Avenue. Although this admission was a statement of fact, it was made in the course of the commission of a crime and there was "no question of voluntariness." . . .
> The hearing court properly denied defendant's motion to suppress the victim's identification of him as fruit of an unlawful arrest. Defendant concedes that there was probable cause to arrest a person bearing defendant's name and known as "Little" by both the assault victim and by narcotics officers conducting a long-term investigation, but argues that there was no evidence that the police believed defendant to be that person at the time of his arrest. However, the circumstances of the arrest,

---

against another, such person: . . . (b) possesses a loaded firearm; or . . . (3) such person possesses any loaded firearm [outside of home or place of business]."  Id. § 265.03.

> including police contact with and surveillance of defendant in connection
> with the drug investigation, lead to an inescapable inference that both the
> narcotics officers and the arresting detective knew that defendant was the
> person being sought (*see People v Gonzalez,* 91 NY2d 909 [1998])
>
> The hearing court properly exercised its discretion in imposing
> reasonable limits on the cross-examination of the arresting officer (*see
> People v Perciballi,* 291 AD2d 360, 361 [2002], *lv denied* 98 NY2d 654
> [2002]) There was no impairment of defendant's ability to litigate the
> material issues.
>
> The procedure under which defendant was sentenced as a
> persistent violent felony offender was not unconstitutional (*compare
> Almendarez-Torres v United States,* 523 US 224 [1998], *with Apprendi v
> New Jersey,* 530 US 466 [2000]).

People v. Garcia-Lopez, 764 N.Y.S.2d 264, 265-66 (N.Y. App. Div. 1st Dep't 2003).

Mr. Mannheimer sought leave to appeal to the New York Court of Appeals by letters

dated October 10 and October 31, 2003.  (Mayouhas Aff. Ex. 3.)  Respondent wrote a

letter in opposition, dated November 2, 2003.  (Mayouhas Aff. Ex. 4.) On December 31,

2003 the Court of Appeals denied Petitioner leave to appeal.  See People v. Garcia-

Lopez, 1 N.Y.3d 572 (2003).  On March 23, 2004, Petitioner's counsel petitioned the

Supreme Court of the United States for a writ of certiorari on the issue of Petitioner's

sentence enhancement.  (Mayouhas Aff. Ex. 5.)  The writ was denied by the Supreme

Court on June 1, 2004.  See Garcia-Lopez v. New York, 541 U.S. 1078 (2004).

On June 8, 2004, Petitioner *pro se* moved the Appellate Division, First

Department for a writ of error coram nobis, (Mayouhas Aff. Ex. 6), claiming that his

appellate counsel was ineffective because he had failed to raise the following claims: (1)

that the court improperly admitted into evidence the gun purchased by Detective

Rodriguez when the evidence did not show that it was the gun used in the assault; (2) that

the court improperly precluded Petitioner's trial counsel from effectively cross-

examining Detective Rodriguez about the use of a Kel transmitter and Nagra recording

device on the day the detective purchased the gun from Petitioner; (3) that the court should have given a missing witness charge because Detective Rodriguez's backup team was not called to testify; (4) that it was prejudicial error to allow the complainant, Ms. Enriquez, to testify that she sold drugs for Petitioner; and (5) that the prosecutor's summation was improper and prejudicial.  (See id. Ex. 6 at 1-16.)  Respondent filed its opposition on October 26, 2004.  (Id. Ex. 7.)  The Appellate Division denied Petitioner's coram nobis application on December 16 2004.  People v. Garcia-Lopez, 787 N.Y.S.2d 674 (N.Y. App. Div. 2004).  Respondent served Petitioner with a copy of the Appellate Division's decision and a notice of entry on May 23, 2006.[2]  Petitioner did not petition the Court of Appeals for leave to appeal the denial.

On October 27, 2005, Petitioner served his Petition for a Writ of Habeas Corpus. On September 19, 2006, he filed an accompanying Memorandum of Law.  On November 28, 2006, Respondent filed its opposition.  Petitioner filed his reply on March 2, 2007.

## DISCUSSION

Petitioner raises a number of claims. First, he asserts that his appellate lawyer was ineffective for failing to raise several trial errors that denied Petitioner his right to a fair trial.  (Petitioner's Memorandum of Law in Support of his Petition for a Writ of Habeas Corpus ("Pet. Mem."), dated September 19, 2006, at 1-2.)  Second, he claims that his conviction should have been overturned by the Appellate Division because Ms. Enriquez's in-court identification of Petitioner was the product of an unlawful arrest. (Pet. for Writ of Habeas Corpus, dated October 27, 2005 ("Pet") ¶ 22.)  Third, he claims that his conviction should have been overturned by the Appellate Division because the

---

[2] It is not clear from Respondent's papers why Petitioner was not served with the notice of the denial of his coram nobis application until a year and a half after the decision was rendered.

statement, "I shot a girl on Valentine [Avenue]," made to Detective Rodriguez should have been suppressed.  (Pet. Mem. at 4-5.)  Third, Petitioner claims that his right to an impartial jury was violated when one of the sworn jurors was discharged before the start of trial.  (Id. at 6.) Finally, he requests a "review of his persistent status claim."  (Id.)  For the reasons that follow, the Petition is denied.

**A.      Section 2254 Standard of Review**

A petitioner in custody pursuant to a state court judgment is entitled to habeas relief if he can show that his detention violates the U.S. Constitution or the laws or treaties of the United States. § 2254(a).  In order to present his claims to a federal court, a petitioner must have exhausted his claims by appealing them to the state's highest court. § 2254(b)(1).  If a petitioner's claims were previously decided on the merits, habeas relief may be granted only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  § 2254(d).

**B.      Ineffective Assistance of Counsel**

Petitioner asserts that his appellate counsel was ineffective because he did not raise a number of claims on direct appeal.  The omitted claims include that (i) his right to a fair trial was violated when the trial court refused to declare a mistrial after Detective Rodriguez testified that he worked for "Bronx Narcotics North,"; (ii) "the trial court's admission into evidence of a gun not used in the assault denied Petitioner a fair trial"; (iii) "the trial court's failure to give Petitioner a missing witness charge denied him a fair trial"; (iv) "Petitioner was denied a fair trial where the trial court allowed the prosecution

to use uncharged crime evidence"; and (v) "Petitioner was denied a fair trial through prosecutorial misconduct during summation."  (Pet. Mem. at 1-2.)

> **1.      Petitioner's Ineffective Assistance of Appellate Counsel Claims Are Unexhausted but Can Be Addressed on their Merits Under § 2254(b)(2).**

Petitioner raised all of his ineffective assistance claims in his <u>coram nobis</u> application to the Appellate Division.  (<u>See</u> Mayouhas Aff. Ex. 6.)  Petitioner's claims remain unexhausted under § 2254(b)(1), however, because Petitioner did not file for leave to appeal with the Court of Appeals after the Appellate Division denied his <u>coram nobis</u> petition, though he had the right to do so under New York Criminal Procedure Law ("NYCPL") section 450.90(1).[3]  (Respondent's Memorandum of Law in Opposition to Petition for Habeas Corpus, dated November 28, 2006 ("Resp. Mem.") at 15); <u>see</u> <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").  Despite the general rule that claims must be exhausted before federal review, a federal court may deny "an application for habeas corpus . . . on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."  § 2254(b)(2); <u>see</u> <u>Aparicio v.</u>

---

[3] In a similar case the district court held that the claims should be held exhausted but procedurally defaulted because the thirty days in which to file for leave had elapsed.  <u>See</u> <u>Castro v. Fisher</u>, No. 04 Civ.0346 (DLC ) (AJP), 2004 WL 1637920, at *26 (S.D.N.Y. 2004) ("Castro had thirty days from the First Department's denial of his <u>coram nobis</u> petition . . . to timely seek leave to appeal to the New York Court of Appeals. C.P.L. § 460.10(5)(a).  Thus, Castro's challenge . . . was not pursued to the New York Court of Appeals, as it could and should have been.  Castro's . . . claim should be denied under the 'unexhausted but deemed exhausted and procedurally barred' doctrine.")  Respondent notes, however, that Petitioner can still file for an extension of time under NYCPL section 460.30, and thus is not procedurally barred from raising the issue with the Court of Appeals.  (Resp. Mem. at 15 n.2.)  That section allows for a motion for an extension of time if a defendant can show: "(a) improper conduct of a public servant or improper conduct, death or disability of the defendant's attorney, or (b) inability of the defendant and his attorney to have communicated . . . ."  NYCPL § 460.30(1).  Petitioner's claims thus remain unexhausted and the Court may, in its discretion, dismiss these claims on the merits under § 2254(b)(2).

Artuz, 269 F.3d 78, 91(2d Cir. 2001). ("ADEPA permits a habeas court to reject a claim on the merits notwithstanding the fact that it is unexhausted.").

There is some question in this case whether a dismissal "on the merits" under § 2254(b)(2) requires an application of § 2254(d)(1)'s heightened deference standard to the Appellate Division's denial of Petitioner's coram nobis petition, or a *de novo* review of Petitioner's ineffective assistance of counsel claim.  Usually when a court denies a petition under § 2254(b)(2), it does a *de novo* review for the obvious reason that the claim has not been presented to any state court and, thus, there is no ruling to which the reviewing court can defer.  See e.g. Palaguachi v. Keane, 58 Fed.Appx. 862, 864 (2d Cir. 2003) ("The District Court first determined (correctly) that because the recantation affidavit had never been submitted to state court, petitioner's claim was unexhausted. Notwithstanding this determination, however, the District Court, as authorized by [§ 2254(b)(2)] turned to the merits and denied the petition.").

In this case, however, the Appellate Division rendered a decision "on the merits"[4] on the points now raised by Petitioner in his federal petition.  Thus, if Petitioner's claim had been exhausted, the state court's determination would have triggered § 2254(d)(1) and AEDPA's deferential standard.  This standard of review is barred only because Petitioner did not seek leave to appeal his coram nobis claim to the Court of Appeals. However, the few cases in this circuit that have applied § 2254(b)(2) to claims that have been presented to the Appellate Division, but not the Court of Appeals, have addressed them *de novo*, not through the deferential lens of § 2254(d)(1).  See e.g. Martinez v.

---

[4] When a state court "(1) disposes of the claim on the merits [rather than on procedural grounds]; and (2) reduces its disposition to judgment," it adjudicates a petitioner's federal claim "on the merits," and thus triggers a highly-deferential standard of review "even if the state court does not explicitly refer to either the federal claim or to relevant federal case law."  Selman v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).

Miller, No. 01 Civ. 2921(GEL), 2001 WL 1382586 (S.D.N.Y. 2003); White v. Keane,

No. 00 Civ.6202 (NRB), 2001 WL 699053 (S.D.N.Y. 2001).  Accordingly, Petitioner's

claim will be addressed *de novo*, though the Court notes that, were it to apply the more

deferential standard, it would necessarily conclude that the Appellate Division's

dismissal was not contrary to, nor an unreasonable application of, established federal law

as determined by the Supreme Court of the United States.[5]  See § 2254(d)(1).

> **2.     Appellate Counsel's Failure to Raise Petitioner's Claims did not Constitute Ineffective Assistance of Counsel.**

The standard to be applied a court deciding a claim of  ineffective assistance of

counsel is laid out in Strickland v. Washington, 466 U.S. 668 (1984).  This standard has

two prongs. The first prong asks whether "counsel's representation fell below an

objective standard of reasonableness."  Strickland, 466 U.S. at 688.  In other words, a

petitioner must show that  "in light of all of the circumstances, the identified acts or

omissions were outside the wide range of professionally competent assistance."  Id. at

690.  If the court determines that an attorney failed to live up to the above standard,  it

must still consider the second prong: whether there is a "reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been

different.  A reasonable probability is a probability sufficient to undermine confidence in

the outcome."  Id. at 694.

The Strickland test applies to Petitioner's claim here of ineffective assistance of

appellate counsel.  See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) ("Although

---

[5] The difference is only analytical, since a claim that has been dismissed in state court and that fails a federal court's *de novo* merits review would necessarily fail a § 2254(d)(1) analysis, and a claim that passes a merits review would have to be returned to the state courts because § 2254(b)(2) only allows a federal court to *dismiss* on the merits.  See Aparicio, 269 F.3d 78 at 91(2d Cir. 2001). ("AEDPA permits a habeas court to reject a claim on the merits notwithstanding the fact that it is unexhausted . . .  However, there exists no complementary power to grant a habeas petition on an unexhausted claim.").

the *Strickland* test was formulated in the context of evaluating a claim of ineffective assistance of trial counsel, the same test is used with respect to appellate counsel.").  To show that counsel was ineffective on appeal "a petitioner alleging ineffective assistance of appellate counsel must prove both that (1) appellate counsel acted objectively unreasonabl[y] in failing to raise a particular issue on appeal, and (2) absent counsel's deficient performance, there was a reasonable probability that defendant's appeal would have been successful before the state's highest court."  Larrea v. Bennett, No. 01 Civ. 5813 (SAS) (AJP), 2002 WL 1173564, at *18 (S.D.N.Y. 2002).

The Supreme Court has made clear that showing deficient performance on the part of appellate counsel is difficult:

> [A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal. [Though] it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim . . . it is difficult to demonstrate that counsel was incompetent.

Smith v. Robbins, 528 U.S. 259, 288 (2000).  To assess counsel's performance, courts should "examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal. Significant issues which could have been raised should then be compared to those which were raised. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."  Mayo, 13 F.3d at 533

Here, Petitioner has not shown ineffective assistance of appellate counsel.  Mr. Mannheimer raised and thoroughly briefed four arguments on direct appeal from Petitioner's conviction:

[1.] THAT THE MOTION COURT AND THE TRIAL COURT ERRONEOUSLY DENIED APPELLANT'S MOTION TO PRECLUDE EVIDENCE OF HIS ALLEGED STATEMENT TO AN UNDERCOVER OFFICER THAT HE "SHOT A GIRL ON VALENTINE AVENUE," WHERE THE PEOPLE HAD FAILED TO GIVE APPELLANT NOTICE OF THE STATEMENT ON THE GROUND THAT IT WAS "RES GESTAE," BECAUSE THE SO-CALLED "RES GESTAE" EXCEPTION TO THE NOTICE REQUIREMENT APPLIES ONLY TO STATEMENTS THAT COULD NOT POSSIBLY BE INVOLUNTARY. CPL § 710.30(1)(a).

[2.] THE HEARING COURT ERRONEOUSLY DENIED APPELLANT'S MOTION TO SUPPRESS THE COMPLAINANT'S EXPECTED IN-COURT IDENTIFICATION OF APPELLANT WHERE (A) THE PEOPLE ADDUCED NO EVIDENCE THAT ANY POLICE OFFICER BELIEVED APPELLANT TO BE "LITTLE," THEREBY FAILING TO DEMONSTRATE THAT THERE WAS PROBABLE CAUSE TO ARREST APPELLANT AND FATALLY TAINTING THE COMPLAINANT'S IDENTIFICATION OF HIM; AND (B) APPELLANT WAS PREVENTED FROM CROSS-EXAMINING THE PEOPLE'S WITNESS ABOUT THE CIRCUMSTANCES LEADING UP TO AND SURROUNDING THE ARREST.  U.S. CONST., AMENDS. IV, VI, XIV; N.Y. CONST., ART. I  §§ 6, 12.

[3.] THE TRIAL COURT ERRED BY DISCHARGING [A JUROR] WITHOUT APPELLANT'S CONSENT AND WITHOUT CONDUCTING A "REASONABLY THOROUGH INQUIRY" . . . . N.Y. CONST., ART. I § 2; CPL § 270.35(1), (2)(a).

[4.] SECTION 400.16 OF THE CRIMINAL PROCEDURE LAW AND § 70.08 OF THE PENAL LAW VIOLATE (A) THE FEDERAL AND STATE CONSTITUTIONS BECAUSE THEY ALLOW THE COURT, SITTING WITHOUT A JURY, TO DETERMINE THAT A DEFENDANT HAS PREVIOUSLY BEEN CONVICTED  OF VIOLENT FELONIES, RESULTING IN A SENTENCE ABOVE THE MAXIMUM THE DEFENDANT WOULD OTHERWISE FACE; AND (B) THE STATE CONSTITUTION BECAUSE THEY ALLOW THE SAME RESULT BASED ON FACTS THAT HAVE NOT BEEN ALLEGED BY A GRAND JURY.  U.S. CONST. AMENDS VI, XIV; N.Y. CONST., ART. I §§ 2, 6.

(Mayouhas Aff. Ex. 1 at 2-4.)[6]

Although the issues now raised by Petitioner were properly raised as objections by his trial counsel, and although a review of the record would have alerted appellate counsel to their existence, Petitioner does not demonstrate that these "ignored issues" were "clearly stronger" than the issues raised by appellate counsel.  See Mayo, 13 F.3d at 533.  In fact, as discussed below, none of the claims now highlighted by Petitioner were likely to prove successful on appeal.[7]   Mr. Mannheimer's decision to omit these issues in favor of the issues he did raise in the appellate brief was strategic; it did not amount to ineffective assistance of counsel.

### i.   Appellate Counsel's Failure to Appeal the Denial of Motion for a Mistrial

Before trial, Justice Cirigliano granted an *in limine* motion, brought by defense counsel, that barred Detective Rodriguez from testifying about conversations with defendant regarding drug sales. (See Pretrial Tr. at 10-11 ("[B]asically, we're going to sanitize the conversation between the defendant and the undercover officer to preclude the general conversation as to any drug admissions by the defendant, that he sells drugs. . . . I do no wish any conversation about the drug crimes that the defendant committed at the outset.").)  On direct examination, Detective Rodriguez testified that he was assigned to "Bronx Narcotics North."  (Trial Tr. at 125.)  Petitioner's trial counsel moved for a mistrial asserting that this testimony was in violation of the judge's *in limine* ruling.  (Id.

---

[6] After Petitioner's conviction was affirmed by the Appellate Division, Mr. Mannheimer sought leave to appeal all four issues to the Court of Appeals.  Garcia-Lopez, 1 N.Y.3d at 572.  When leave was denied,  he appealed the constitutional issue of  Petitioner's sentence, in a well-reasoned brief to the United States Supreme Court.  (See Mayouhas Aff. Ex. 5); Garcia Lopez, 541 U.S. at 1078.

[7] The likelihood of success on appeal usually applies to the "prejudice" portion of the Strickland analysis. However, whereas here, the issue is whether appellate counsel should have raised certain claims, the fact that the claims were likely to fail factors heavily into a determination of whether counsel was justified in omitting them.

at 125-27.)  The judge denied the motion, and specified how the prosecution should comply with his ruling regarding the detective's testimony:

> THE COURT: The reason why he is on the stand, and the only reason I'm permitting him, is because he, in the course of his activities as an undercover officer, not a narcotics officer, an undercover officer – make it plain, all right; did he have and speak to the defendant and ultimately take a statement from the defendant and obtain a gun from the defendant.  That is what he is on the stand for, nothing else.

(Id. at 127.)  The prosecutor finished Detective Rodriguez's direct testimony within the bounds established by the judge.

Petitioner asserts that his appellate counsel should have appealed Judge Cirigliano's refusal to order a mistrial.  (Pet. Mem. at 3.)  However, "the decision on a mistrial motion is within the trial court's discretion and will only be disturbed if it amounts to an abuse of discretion."  People v. Love, 762 N.Y.S.2d 162, 165 (App. Div. 3rd Dep't 2003).  In this case, Detective Rodriguez's statement that he was assigned to Bronx Narcotics North did not violate the trial court's *in limine* ruling that the detective was barred on direct examination from testifying about drug conversations with Petitioner or Petitioner's drug crimes. Since neither the witness nor the prosecution violated the judges *in limine* ruling, the judge properly denied the motion for a mistrial. Therefore, there was no reason for appellate counsel to raise the denial of a mistrial on appeal.

### ii.      The Failure to Appeal the Admission of the Gun as Evidence

Petitioner argues that his appellate counsel should have claimed that Petitioner's right to a fair trial was denied because the admission of a gun that was "not used in the assault" was unduly prejudicial.  The gun was admitted through Detective Rodriguez, who testified that Petitioner sold it to him on February 25, 1999.  (Trial Tr. at 133-35.)  In

15

a pretrial ruling, the trial court denied a motion to suppress the gun because there was

strong circumstantial evidence that Petitioner had possessed the gun on January 25, 1999,

the day of the assault on Ms. Enriquez.  Justice Cirigliano stated that "the defendant is

alleged to have possessed the gun, . . . the gun is of the same caliber as . . . shells that

were recovered at the scene [and] . . . there was a statement that accompanied the transfer

of the gun that indicated that the defendant had fired a weapon at the young lady."  (Trial

Tr. at 274.)

   Although "an admission in evidence of weapons having no probative value or

serving no valid purpose may be unduly prejudicial and grounds for reversal,"  People v.

Bass, 715 N.Y.S.2d 466, 470 (N.Y. App. Div. 3rd Dep't 2000), in this case "there were

enough surrounding circumstances . . . to enable the jury to find the gun was the one used

in the commission of the crimes here charged."  People v. Randolph, 338 N.Y.S.2d 229,

231(N.Y. App. Div. 1st Dep't 1972).  It was established that the gun, a Lorcin semi-

automatic pistol, belonged to Petitioner because he sold the weapon to Detective

Rodriguez.  (Trial Tr. at 134.)  Ms. Enriquez testified that the gun was the same color,

shape, and size as the gun Petitioner used to shoot her.  (See id. at 83.)  Detective Barry

testified for the prosecution that the four cartridge casings and two copper bullet

fragments recovered at the scene could have been fired from a Lorcin .380.  (Id. at 316.)

He also testified that there was "burned an unburned gun pow[d]er . . . left in the barrel,"

suggesting that, previously, "a live round had been fired" from the gun.  (Id. at 312.)

   Furthermore, recognizing that there was a month separating the day of the attack

from the date on which the gun was purchased from Petitioner, the judge made clear in

his instruction to the jury that Petitioner was being charged with possessing the gun when

he shot Ms. Enriquez on January 25, 1999, not possessing the gun on the day he sold the

Lorcin to Detective Rodriguez: "if you are not convinced . . . that the defendant possessed

the gun on January 25, 1999, then even if you were to find that . . . the defendant

afterwards possessed the gun on February 25, 1999 . . . you may not convict the

defendant of possession of a weapon."  (Id. at 552.)  Given this evidentiary record, it did

not constitute ineffective assistance of counsel for Mr. Mannheimer to omit the issue of

the admission of the gun into evidence from his appellate brief.

### iii.   Failure to Appeal the Denial of Trial Counsel's Request for a Missing Witness Instruction

Petitioner contends that the trial judge should have given the jury a missing

witness instruction because Detective Rodriguez's backup officers did not testify at the

trial.  (See Pet. Mem. at 3 ("Detective Rodriguez was operating with a back up Unit [sic]

that monitored his conversations with petitioner.  Petitioner contends that the Prosecutor

failed to produce anyone from this team who could verify the statement used against

him.").)

A missing witness instruction "allows a jury to draw an unfavorable inference

based on a party's failure to call a witness who would normally be expected to support

that party's version of events."  People v. Sauvignon, 100 N.Y.2d 192, 196 (2003). When

a party requests a missing witness instruction, it has the burden to show "[f]irst [that] the

witness's knowledge [is] material to the trial. Second, the witness must be expected to

give noncumulative testimony favorable to the party against whom the charge is sought. .

. . Third, the witness must be available to that party."  Id. at 197.

At the close of the prosecution's case, defense counsel requested a missing

witness charge.  (See, Trial Tr. at  357-59 ("In this case, the prosecution have [sic] not

called any of the police officers who were the backup officers to the undercover officer. .

. .  The significance is crucial [because the undercover officer] claimed . . . that the

defendant admit[ed] shooting a girl on Valentine Avenue. . . . The fact that the backup

officers are not here . . . is entitled  . . . to a missing witness charge.").)  The motion was

denied by the trial judge who stated that "[t]here is no indication in this record that either

of [the backup officers] heard anything." (Id. at 362-63.)

    During the trial, Detective Rodriguez testified that though he used a Kel/Nagra

transmitting device used during the undercover operation to listen in on and record his

interactions with Petitioner, no recording of their conversations existed.  (Id. 166-67.)  He

also testified that the transmitting device did not work "ninety percent of the time."  (Id.

at 151-52.)  At the trial defense counsel cross examined Detective Rodriguez about the

fact that he had a backup team, and the fact that he possessed a Kel.  Counsel did not

establish, however, during either his cross examination or re-cross examination of

Detective Rodriguez, that the backup team was either in a position to hear or had been

able to hear Petitioner's conversations with the detective during their lengthy travels on

February 25, 1999.  (See id. at 151-57.)

     An appellate court "review[s] a trial court's decision whether to grant a missing

witness charge on an abuse of discretion standard."  Sauvignon, 100 N.Y.2d at 197;

United States v. Torres, 845 F.2d 1165, 1170-71 (2d Cir.1988) ("The decision whether to

give a missing witness charge is committed to the sound discretion of the trial court.").

The judge ruled that a missing witness charge was not appropriate because there was no

indication in the record that the backup officers heard the conversation between Detective

Rodriguez and Petitioner and, thus, could not give material testimony.  Since defense

counsel did not establish that the back up team would have been able to give material testimony, as it is required to do, see Sauvignon, 100 N.Y.2d at 197; People v. Gonzalez, 68 N.Y.2d 424, 427 (1986), Justice Cirigliano's decision to decline to give missing witness charge was correct under New York law.  It was, therefore, highly unlikely that, on an abuse of discretion standard, an appellate court would have upset the Petitioner's conviction based on the omission of the requested charge.   Malik v. Kelly, 97 Civ. 4543, 1999 WL 390604, at *7 (E.D.N.Y. 1999) ("[D]ecisions in this area will rarely support reversal . . . since reviewing courts recognize the 'aura of gamesmanship that frequently accompanies requests for a missing witness charge as to which the trial judge will have a surer sense' than the reviewing court." (quoting Torres, 845 F.2d at 1171)).  Appellate counsel's failure to raise this claim on appeal does not constitute ineffective assistance of counsel.

### iv.      Failure to Appeal the Use Of Uncharged Crime Evidence

Petitioner states that he was "denied a fair trial where the trial court allowed the prosecution to use uncharged crime evidence."  (Pet. Mem. at 3.)  Nowhere in his papers does Petitioner make any factual or legal assertions to support this claim.  Courts are, however, instructed to construe *pro se* petitions liberally.  See  Matias v. Artuz, 8 Fed.Appx. 9, 11 (2d Cir. 2001) ("We construe both Matias's habeas petition and his motion for a certificate of appealability liberally, since both documents were filed *pro se*.").  Thus, the Court attempts to address this argument here.

If Petitioner is claiming that testimony the prosecutor elicited from Detective Rodriguez about his ongoing undercover investigation of Petitioner for drug dealing was evidence of an uncharged crime, that testimony was only allowed to counteract the

suggestion made on cross examination that the detective had "deliberately [intended to ] to get a gun from [Petitioner]," (Trial Tr. at 147), and that Petitioner was "targeted . . . as somebody to investigate" in the assault on Ms. Enriquez.  (Id. at 148.)  If Petitioner is claiming that Ms. Enriquez's testimony about her drug deals with Petitioner should not have been admitted in evidence, that testimony was admitted to show Petitioner's motive and intent in shooting Ms. Enriquez.  If Petitioner is claiming that testimony about his possession of the Lorcin pistol on February 25, 1999 was an uncharged crime, the evidence that the gun was in Petitioner's possession on February 25, 1999 was only admitted to show that the gun could well have been the weapon used to shoot Ms. Enriquez on January 25, 1999.

Under every circumstance, the testimony was appropriate and not admitted erroneously.  See People v. Till, 87 N.Y.2d 835, 836 (1995) ("A trial court may admit into evidence uncharged crimes when the evidence is relevant to a pertinent issue in the case other than a defendant's criminal propensity to commit the crime charged.").  Appellate counsel was not ineffective for failing to raise these arguments on appeal.

> **v.   Failure to Appeal Improper Statements Made by Prosecutor on Summation**

Finally, Petitioner claims that the prosecutor's summation contained "several comments . . . [that] were highly inflammable and prejudicial."  (Pet. Mem. at 3.)  Petitioner contends that his appellate counsel should have raised, as an issue on appeal, the prosecutor's statement that the "gun bought from the defendant on February 25, 1999 . . . could . . . [have been] used in the assault," and that Petitioner was a "drug dealer" who had been under investigation "before the shooting occurred."  (Id.)

20

Petitioner cites People v. Vielman, 818 N.Y.S.2d 291 (N.Y. App. Div. 2nd Dep't 2006), as support for his claim.  In that case, however, the situation was that "[t]he prosecutor knew that her argument . . . rested on a false premise. . . . [I]t was a blatant attempt to mislead the jury."  Id. at 292.  In this case, the prosecutor's statements were consistent with the evidence adduced at trial, and were not false or misleading. Testimony that Petitioner was a drug dealer was elicited from Ms. Enriquez during direct examination, (see Trial Tr. at 67.), and from Detective Rodriguez on re-direct examination. (See id. at 158-60.)  While the gun introduced at trial was never conclusively linked to the assault, the prosecutor did not ever state that it was, in fact, the gun used in the assault.  Even Petitioner notes that the prosecutor's statement was only that it *could* be the gun.  (Pet. Mem. at 3.)  In fact, the prosecutor made clear in his summation that "I never said it was conclusively the gun."  (Trial Tr. at 517.)

There was no merit to Petitioner's argument that the prosecutor's summation constituted prejudicial error. Therefore, appellate counsel was not ineffective for leaving that claim out of his appellate brief.

Though it is not necessary to determine the prejudice prong of the Strickland analysis, given that Petitioner has failed to prove that his appellate counsel acted ineffectively, it is unlikely that any of the issues discussed above would have survived appellate review.

**C.     Petitioner Had an Opportunity to Litigate his Fourth Amendment Claims in front of the State Courts and the In-Court Identification of Petitioner was Not Tainted by an Unlawful Arrest.**

Petitioner claims that his conviction should have been overturned because Ms. Enriquez's in-court identification of him was tainted by an unlawful arrest,  (Pet. ¶ 22),

and because there was no "independent source hearing" to determine that Ms. Enriquez

knew Petitioner.  (Pet. Repl. Mem., dated March 2, 2007 at 2.)  Justice Silverman ruled

that the arrest was lawful in a pretrial hearing where he made detailed findings of fact.

The Appellate Division ruled that "[t]he hearing court properly denied defendant's motion

to suppress the victim's identification of him as fruit of an unlawful arrest,"  Garcia-

Lopez. 764 N.Y.S.2d at 266.

   The Supreme Court has ruled that "where the State has provided an opportunity

for full and fair litigation of a Fourth Amendment claim, the Constitution does not require

that a state prisoner be granted federal habeas corpus relief on the ground that evidence

obtained in an unconstitutional search or seizure was introduced at his trial."  Stone v.

Powell, 428 U.S. 465, 482, (1976).  A state prisoner is denied a chance to fully and fairly

litigate his claims only: "(a) if the state has provided no corrective procedures at all to

redress the alleged fourth amendment violations; or (b) if the state has provided a

corrective mechanism, but the defendant was precluded from using that mechanism

because of an unconscionable breakdown in the underlying process."  Capellan v. Riley,

975 F.2d 67, 70 (2d Cir. 1992) (citing Gates v. Henderson, 568 F.2d 830, 840 (2d Cir.

1977)).  New York's Criminal Procedure Law section 710.10, which governs litigation of

Fourth Amendment claims, has been approved by the Second Circuit.  Capellan, 975 F.2d

at 70 n.1.

   As is demonstrated by the review of the facts above, the defendant was given

every chance to "use [the] mechanism" provided to him by the state.  He had a

suppression hearing at which his trial counsel was given an opportunity to cross-examine

Detective Rice as to the probable cause for Petitioner's arrest.  His appellate counsel had

the opportunity to (and did) raise and fully brief the issue on appeal.  There is no evidence that there was an "unconscionable breakdown" in the process.

In any event, the probable cause ruling was sound: "[p]robable cause requires an officer to have 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'"  Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (quoting Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000)).  An independent source hearing is required only where "a confirmatory identification [is made] after an illegal arrest."  Owens v. Taylor, No. 04 Civ. 4909 (PKC), 2005 WL 1705071, at *6 (S.D.N.Y. 2005).  There was ample evidence elicited at the suppression hearing to support a finding of probable cause, thus, there was no reason to suppress Ms. Enriquez's identification of Petitioner in either the pretrial photo line-up, or at trial.  Furthermore, Ms. Enriquez's original description of Petitioner made it clear that she knew him independently of his assault of her.

**D.     The Statement "I shot a girl on Valentine [Avenue]" was Not Obtained or Admitted in Violation of Petitioner's Constitutional Rights.**

In addition to his ineffective assistance of appellate counsel claims, Petitioner argues that improper investigatory tactics and trial errors violated his constitutional rights.  Petitioner claims that the admission of his statement to Detective Rodriguez that he had "shot a girl on Valentine [Avenue]" was obtained in violation of his Fifth Amendment right to remain silent, and his Sixth Amendment right to counsel.  (See Pet. Mem. at 4.)

On appeal, Petitioner's counsel raised the issue in terms of state law.  (See Mayouhas Aff. Ex. 1 at 28-37.)[8]  He did not raise the constitutional claims now made by Petitioner -- that his Fifth and Sixth Amendment rights were violated because the statement was obtained by "false pretenses without counsel present."  These constitutional claims are, therefore, unexhausted under § 2254(b)(1)(A) because they were not raised in state court proceedings.[9]  The Second Circuit has held that "when 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts also must deem the claims procedurally defaulted." Aparicio, 269 F.3d at 90 (quoting Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)).  In order to obtain a review of the merits of a procedurally defaulted claim in federal court, "the petitioner must show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)."  Aparicio, 269 F.3d at 90.  In the instant case, Petitioner does not show, nor does a review of the record reveal, any cause for the default.  Moreover, Petitioner does not demonstrate that a miscarriage of justice will be wrought by failure to consider these claims on their merits.

---

[8] Petitioner's appellate counsel claimed a violation of NYCPL section 710.30, which requires the People to give timely notice of their intention to use a Defendant's statement against him.  See NYCPL § 710.30 (1) (McKinney 2006) ("Whenever the people intend to offer at a trial . . . evidence of a statement made by a defendant to a public servant, which statement if involuntarily made would render the evidence thereof suppressible upon motion . . . they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered.").  Petitioner now raises the claim again here.  However, the issue of notice is unreviewable because it is a question of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-8 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  Regardless, the claim would be denied on its merits because Petitioner's statement was clearly voluntary.  People v. Greer, 42 N.Y.2d 170, 178 (1977) ("[T]he notice of intention to offer evidence need not be served upon the defendant where there is no question of voluntariness.").

[9] Petitioner's appellate counsel did note that  "a statement can be considered coerced in violation of the federal . . . constitution[],"  (Mayouhas Aff. Ex. 1 at 32, Ex. 3 at 5 n.3. ), but it was raised only in the context of a violation of state statutory law, not as an independent constitutional claim.

In any event, Petitioner's claims would fail a merits review: they do not raise constitutional issues because the statement was made during the course of criminal conduct and not during a custodial interrogation.  First, Petitioner's right to remain silent was not violated when he made the incriminating statement to Detective Rodriguez because the statement was made voluntarily during an undercover operation eight days before he was arrested.  Second, Petitioner's right to counsel was not violated because the right had not yet attached.  The cases cited by Petitioner as support for his claim, Maine v. Moulton, 474 U.S. 159 (1985),  Massiah v. Untied States, 377 U.S. 201 (1964) and Arizona v. Fulmanate, 499 U.S. 279 (1991), concern defendants who made incriminating statements to undercover government agents after they had been indicted or incarcerated. See e.g. Moulton, 474 U.S. at 172 ("We reversed Massiah's conviction on the ground that the incriminating statements were obtained in violation of Massiah's rights under the Sixth Amendment. The Court stressed the fact that the interview took place after indictment, at a time when Massiah was clearly entitled to the assistance of counsel.") (citing Massiah, 377 U.S. at 204)).  Petitioner was under investigation, but had not been indicted nor arrested at the time he made his statement; his rights under the Fifth and Sixth Amendments had not yet attached.

**E.   Discharging a Juror did not Deprive Petitioner the Right to an Impartial Jury in Violation of the Constitution.**

After jury selection was completed, but before the jury was sworn in, the court learned that one of the jurors had been dismissed by someone in the Central Jury Room. After attempting to contact the juror both at her home and workplace, she was discharged and replaced by an alternate juror.  (See Trial Tr. at 224-37.)

Petitioner's claim that the dismissal of a juror without "a voir dire that the juror could not attend, or was unfit to serve [at] trial," (Pet. Mem. at 6.), violated Petitioner's Sixth Amendment right to an impartial jury is unexhausted because it was not raised in federal constitutional terms in state court. It is thus procedurally defaulted.

Petitioner's claim would also fail a review on the merits. The claim was raised at the state level as a violation of a state law which requires a court to determine "that there is no reasonable likelihood such juror will be appearing in court within two hours of the time set by court for the trial to resume." NYCPL § 270.35(2)(a). The denial of the state law claim is unreviewable by this court. Estelle, 502 U.S. at 67-8. There is no corresponding federal constitutional right. As the Supreme Court case cited by Petitioner notes, all the Constitution guarantees is that a defendant be tried by an "impartial jury." See Patton v.Yount, 467 U.S. 1025, 1036 (1964) (citing U.S. CONST. AMEND VI)(finding that though jurors were affected by pretrial publicity, they were able to render an impartial verdict). As Respondent notes, Petitioner does not claim that the jury that convicted him was not impartial, and the record does not indicate that the replacement of one juror with an alternate, not struck during voir dire, affected the jury's impartiality. (See Resp. Mem. at 21.)

**F.      Petitioner's Sentence Did not Violate His Right to a Jury Trial.**

On December 21, 2000, a hearing was held to determine whether Petitioner was a persistent violent felony offender under New York law. See NYPL § 70.08(1) (McKinney 2006) ("A persistent violent felony offender is a person who stands convicted of a violent felony offense as defined in subdivision one of section 70.02 . . . after having previously been subjected to two or more predicate violent felony convictions as

defined in paragraph (b) of subdivision one of section 70.04 of this article.").  The
prosecution presented evidence that Petitioner had been convicted of two  previous
felonies that met the definition of predicate violent felony convictions: (1) on June 10,
1985, in New York Supreme Court, Richmond County, he was convicted of Assault in
the Second Degree and sentenced to 1 to 3 years imprisonment; and (2) on July 9, 1990,
he was convicted in New York Supreme Court, Bronx County, of Criminal Possession of
a Weapon in the Third Degree, and sentenced to 2 ½ to 5 years imprisonment.
(Sentencing Hearing, dated December 21, 2000 7-8.)   On March 8, 2001, Judge
Cirigliano found that the petitioner met the definition for a persistent violent felony
offender under NYPL section 70.08(1)(a), and sentenced Petitioner to 16 years to life
imprisonment.  See id. § 70.08(2), (3)(b)-(c).

Petitioner claims that the sentence increase he received due to his status as a
persistent violent felon was a violation of the Sixth Amendment and the Supreme Court's
ruling in Apprendi v. New Jersey, 530 U.S. 466 (2003), that "any fact that increases the
penalty for a crime beyond the prescribed statutory maximum must be submitted to a
jury, and proved beyond a reasonable doubt."  Id. at 490.[10]

This argument was exhausted at the state level, having been presented to the
Court of Appeals, which denied leave to appeal.[11]  The Appellate Division addressed
Petitioner's argument and ruled that "the procedure under which a defendant was
sentenced as a persistent violent felony offender was not unconstitutional. . . ."  Garcia-
Lopez, 764 N.Y.S.2d at 266.  This ruling was not contrary to, nor an unreasonable

---

[10] This issue was preserved for appeal by defense counsel who objected to the constitutionality of section
70.08 and  referenced Apprendi at Petitioner's sentencing hearing.  (See Sentencing Hearing, dated March
8, 2001 at 7.)
[11] Appellate counsel also raised the issue in its petition for certiorari to the Supreme Court.  (See Mayouhas
Aff. Ex. 6.)

application of, established Supreme Court law. It is consistent with the Court's ruling in Apprendi, which specifically excepted "the fact of a prior conviction" from the facts that need to be proven to a jury and beyond a reasonable doubt. 590 U.S. at 490; see Long v. Donnelly, 335 F.Supp.2d 450, 465-66 (S.D.N.Y. 2004) ("NYPL § 70.08 is squarely within the narrow exception announced in *Apprendi* encompassing judicial fact-finding based solely on prior convictions."); Alexander v. Ercole, No 06 Civ. 3377 (JG), 2007 WL 922419, at *7 (E.D.N.Y. 2007) ("[T]he Supreme Court . . . specifically approved of sentencing enhancement schemes like section 70.08, in which the only enhancing fact is the fact of recidivism.").[12]

### CONCLUSION

For the reasons stated above, Petitioner's § 2254 petition is denied.

IT IS SO ORDERED.

Dated:  New York, New York
        May 18, 2007

Robert P. Patterson, Jr.
U.S.D.J.

---

[12] See also Brown v. Greiner, 409 F.3d 523, 534 (2d Cir. 2005) ("New York's persistent felony offender statute authorizes an enhanced sentence if: (1) a felony offender has two predicate felony convictions; and (2) the court "is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest." N.Y. Penal Law § 70.10. The first determination clearly falls within *Apprendi*'s "fact of a prior conviction" exception.").

*Copies of this Opinion and Order Sent to:*

*Petitioner Pro Se*:
Carlos Garcia-Lopez
#01-A-1688
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562

*For Respondent*:
District Attorney
Robert T. Johnson
Bronx County
198 East 161st Street
Bronx, NY 10451
By: Eldar Mayouhas, Assistant District Attorney
Tel:    (718) 590-2156
Fax:    (718) 590-6523